UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **JESSICA SCHNELL,** <br><br> Plaintiff, <br><br> v. <br><br> **IDEXX LABORATORIES, INC.,** <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) **Case No.** <br> ) <br> ) <br> ) <br> ) |

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jessica Schnell, by and through undersigned counsel, hereby complains against Defendant IDEXX Laboratories, Inc. as follows:

### INTRODUCTION

1. This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4571 *et seq.*

2. This case challenges Defendant's: (1) unlawful sex-based discrimination (disparate treatment and disparate impact) and sex stereotyping of Plaintiff in violation of Title VII and the MHRA; and (2) retaliation against Plaintiff for opposing practices made unlawful by Title VII and the MHRA.

### THE PARTIES

3. Plaintiff Jessica Schnell ("Schnell") is an individual residing in the Town of Shapleigh, County of York, and State of Maine.

1

4.     Defendant IDEXX Laboratories, Inc. (hereinafter "IDEXX") is the global leader in veterinary diagnostics, software, and water microbiology testing. IDEXX is headquartered in Westbrook, Maine, which is its principal place of business.

5.     Throughout Schnell's employment and to the present, IDEXX has had more than 500 employees.

## JURISDICTION AND VENUE

6.     Prior to filing this Complaint, Schnell filed a charge of discrimination with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC"). The MHRC issued Plaintiff a notice of right to sue letter on or about April 22, 2025.

7.     Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in York county.

8.     The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## BACKGROUND FACTS

9.     Schnell began working for IDEXX in April of 2012 as a Customer Support Consultant I for Laboratory Services in the inbound call center.

10.    IDEXX is an international, publicly traded company with over 10,000 employees worldwide. IDEXX is engaged in the business of developing, manufacturing, and distributing veterinary medicine products and services.

11.    During the early years of her career with IDEXX, Schnell was promoted several times and her reviews indicated that she either met or exceeded expectations.

12. Schnell's job performance always met expectations throughout her tenure with IDEXX, even if she needed coaching on a few occasions, which she readily accepted to further develop her job skills.

13. Schnell experienced gender-based discrimination and retaliation for opposing practices made unlawful by Title VII while working for IDEXX, which were similar to the experiences of other female employees such as Jamie Leavitt (f/k/a Jamie Cavanagh), Jessica Mayhew, and Molly Hoisser. The Complaints of each of these women are attached here as Exhibits A, B, and C, respectively, and the facts alleged therein are specifically incorporated here by reference.

14. Prior to 2016, Schnell applied for a role as a Diagnostic Support Consultant. IDEXX failed to promote Schnell into this position, stating that she was "overly confident."

15. Upon information and belief, IDEXX would not have treated similarly situated male employees who demonstrated confidence in the same manner. Instead, the experience of many women at IDEXX compared to male employees suggests that IDEXX would have viewed a man's display of confidence as an asset and personality trait worthy of promotion.

16. IDEXX eventually promoted Schnell into the role of Diagnostic Support Consultant. Her hiring manager in August of 2019 was Dr. Kristi Graham.

17. In late 2020 or early 2021, the medical consulting management team at IDEXX was reorganized, and Meghan Ludka became Schnell's supervisor.

18. Throughout that time period and in the months that followed, IDEXX required Schnell to handle lab service calls without training, direction, or support.

19. Eventually, in mid-2021, Schnell complained to her supervisor, Meghan Ludka, that she did not feel supported in her role or properly trained for the various customer concerns that she was required to mitigate.

20. Ludka did not adequately respond to Schnell's concerns, which prompted Schnell to escalate these concerns to human resources ("HR"). An HR representative named Emily Cote suggested that Schnell reach out to Dr. Erin Brown, Ludka's supervisor.

21. Shortly after Schnell reached out to HR and Dr. Brown, IDEXX issued her a false and pretextual verbal warning related to metrics and status codes.

22. Dr. Brown (Ludka's supervisor) followed up with Schnell after the verbal warning. Schnell informed Dr. Brown that she felt disappointed and frustrated, because she went to HR for guidance and support, and was disciplined very soon after, suggesting retaliation.

23. Schnell then applied for a position as a product manager in the hematology department at IDEXX. Schnell scheduled one-on-one meetings with the hiring manager to discuss the role, but Ludka canceled these meetings.

24. Schnell then learned that IDEXX hired Ludka instead of her for the product manager position.

25. In 2023, Dr. Kathryn Rawling became Schnell's manager. IDEXX continued to unfairly scrutinize and criticize Schnell's performance without giving

her any support or guidance on how to better achieve the goals and objectives of her role.

26. Schnell requested recordings of her customer calls so that she could review and improve upon her interactions with customers. However, IDEXX unfairly criticized Schnell's communications in a manner that suggested gender bias.

27. Schnell told her manager that she did not know how to request assistance and coaching at IDEXX without facing punitive action. Schnell's manager agreed with this concern, confirming that IDEXX has a pervasive culture of retaliation.

28. IDEXX told Schnell that she needed "voice coaching," which upon information and belief was pretext for gender-based discrimination and would not have been communicated to Schnell if she had been male.

29. IDEXX engaged in direct gender-based discrimination by suggesting that Schnell was "rude," "mean," and unlikeable, based on her communication style. Upon information and belief, IDEXX would not have criticized a male employee in the same manner.

30. Exhibits A-C describe egregious behavior on the part of male employees at IDEXX, who upon information and belief were not disciplined or criticized the way Schnell was for far less egregious behavior.

31. IDEXX falsely accused Schnell of being "too direct," which was discriminatory because IDEXX would not have criticized a male employee in this

manner. On the contrary, direct communication would be applauded coming from a male employee.

32. IDEXX issued formal discipline to Schnell on or about March 1, 2023, called a "Written Expectations Summary," which was the second step in the company's formal progressive discipline process. This written discipline criticized Schnell's "feelings" and "negative state of mind," which once again would not be criticisms that IDEXX would make toward male employees.

33. IDEXX's response to the MHRC contends that Schnell made a comment on a recorded line, stating "I can just shoot people," out of frustration. Upon information and belief, IDEXX disparately criticized and scrutinized Schnell for this comment made in frustration, while excusing far more egregious and serious threats of actual violence by male employees, or sexually harassing behavior by them (See Exhibits A-C).

34. IDEXX decided to terminate Schnell's employment in December of 2023 after repeated instances of heightened scrutiny over her interactions with customers that would not have occurred if she had been male.

35. IDEXX terminated Schnell's employment on February 1, 2024, for false and discriminatory reasons.

36. Throughout the final year of her employment, Schnell asked questions about customer support calls regarding erroneous test results. Specifically, there were issues with the 4Dx Multiplex test, and the reference labs related to the test.

Schnell noticed that her superiors were particularly retaliatory in their actions toward her after she raised these questions.

37. One of Schnell's colleagues at IDEXX indicated that she was "one of the [employees] who asked hard questions and [IDEXX] didn't like it." Schnell understood this comment to be a direct acknowledgement that IDEXX retaliates against employees who assert their rights, ask difficult questions, or speak out against illegal or unfair practices.

38. IDEXX's pretextual stated reason for terminating Schnell's employment – "inappropriate and unprofessional behavior" – amounts to evidence of gender-based discrimination because IDEXX tolerates bad behavior from male employees without terminating them. For example, upon information and belief, the male employees mentioned in Exhibits A-C (including but not limited to Richard and Blaine) were not terminated.

39. IDEXX engaged in sex-based discrimination (disparate treatment and disparate impact), sex stereotyping, and retaliation in violation of Title VII and the Maine Human Rights Act.

40. IDEXX's violations of state and federal law alleged herein were undertaken willfully or knowingly.

**COUNT I – SEX-BASED DISCRIMINATION IN VIOLATION OF TITLE VII**
**(42 U.S.C. § 2000e *et seq.*)**

41. Plaintiff repeats the allegations contained in Paragraphs 1 through 40 as if fully stated herein.

42. Schnell is female and a member of a protected class based on her sex.

43. Title VII makes it illegal for an employer to discriminate against an employee based on sex.

44. Defendant's action described above amounted to sex-based discrimination and disparate treatment of Schnell in violation of Title VII, because similarly situated male employees were treated more favorably than Schnell in the terms and conditions of their employment.

45. IDEXX's policies, procedures, retaliatory environment, and HR practices have a disparate impact on women like Schnell compared to their male counterparts.

46. Defendant also engaged in sex stereotyping in violation of Title VII by criticizing Plaintiff for a communication style that is stereotypically male, such a being direct.

47. Defendant's criticisms of Plaintiff's voice, personality, and communication style were all the result of sex stereotyping and bias against women in employment.

48. Although Schnell did not make an explicit whistleblower complaint about IDEXX's 4Dx Multiplex test, she asked questions that drew a retaliatory response from IDEXX and served as the animus behind criticisms of Schnell's communication style, such as being "too direct" or "rude."

49. A continuing violation of Title VII has occurred in this case because Plaintiff alleges an entire culture of intentional discrimination and retaliation against women working at IDEXX, as described more fully in Exhibits A-C.

50. As a result of Defendant's discrimination and willful violation of Title VII, Schnell has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Jessica Schnell requests that the Court award her damages for Defendant's violation(s) of Title VII, in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT II – OPPOSING A PRACTICE MADE UNLAWFUL BY TITLE VII
**(42 U.S.C. § 2000e *et seq.*)**

51. Plaintiff repeats the allegations contained in Paragraphs 1 through 50 as if fully stated herein.

52. Schnell opposed a practice made unlawful by Title VII by making complaints to HR about how she was being treated, only to be written up very shortly after raising such complaints.

53. Schnell also complained to her supervisors and HR about not being sufficiently supported in her role every time she was criticized for gender-related stereotypes, and each time she made these complaints, she suffered retaliation.

54. Although Schnell's original complaint to HR occurred several years prior to her termination, and she experienced gender-based discrimination as early as 2016, Schnell renewed similar complaints about the culture of retaliation at IDEXX

in close temporal proximity to her termination, such that a continuing violation of Title VII's anti-retaliation provision exists.

55. As a result of Schnell's protected conduct, IDEXX took adverse action against her.

56. IDEXX's adverse action against Schnell, as set forth in detail above, bears a causal connection to her opposing practices made unlawful by Title VII.

57. As a result of Defendant's willful retaliation in violation of Title VII, Schnell has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, liquidated damages, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Jessica Schnell requests that the Court award her damages for Defendant's violation(s) of Title VII, in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT III – VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5 M.R.S. § 4571 *et seq.*)

58. Plaintiff repeats the allegations contained in Paragraphs 1 through 57 of her Complaint as if fully set forth herein.

59. For the reasons set forth above, unlawful discrimination and retaliation have taken place within the meaning of the Maine Human Rights Act.

60. As a result of IDEXX's discriminatory actions, Plaintiff has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, liquidated and punitive damages, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Jessica Schnell respectfully requests that the Court enter judgment in her favor and against Defendant and award her compensatory damages, lost wages, liquidated damages, punitive damages, reasonable costs and attorney's fees, pre- and post-judgment interest, and such further relief the Court may deem proper.

## JURY TRIAL DEMAND

Plaintiff Jessica Schnell hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Respectfully submitted,

Dated: July 21, 2025                    */s/ Laura H. White*

_____
Laura H. White, Bar No. 4025
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
*lwhite@whiteandquinlan.com*


*/s/ Danielle Quinlan*

_____
Danielle Quinlan, Bar No. 5480
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
*dquinlan@whiteandquinlan.com*