UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JESSICA SCHNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:25-cv-00386-SDN |
| | ) | |
| IDEXX LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION TO DISMISS

Defendant IDEXX Laboratories, Inc. ("IDEXX") moves to dismiss, ECF No. 4, Plaintiff Jessica Schnell's complaint, ECF No. 1, pursuant to Federal Rule of Civil Procedure 12(b)(6). Ms. Schnell alleges IDEXX violated Title VII of the Civil Rights Act of 1964 and the Maine Human Rights Act ("MHRA") by discriminating against her based on her gender and retaliating against her for opposing IDEXX's purported unlawful practices. IDEXX argues Ms. Schnell's complaint should be dismissed in its entirety because it fails to state a claim upon which relief can be granted. For the reasons discussed below, the Court **GRANTS** in part and **DENIES** in part IDEXX's motion to dismiss with leave to amend Counts I, II, and III.

### I.      Incorporation by Reference

As an initial matter, Ms. Schnell attaches to her complaint three extrinsic documents—ECF No. 1-1 ("Plaintiffs' Second Amended Class Action Complaint"), ECF No. 1-2 ("Mayhew First Amended Complaint"), and ECF No. 1-3 ("Hoisser Complaint")— each of which is a complaint filed by her same counsel against IDEXX in three separate cases involving different plaintiffs. These complaints each assert a Title VII gender-based discrimination claim against the company. Ms. Schnell requests the Court consider these

documents in deciding the motion to dismiss, contending she properly incorporated them by reference into her own complaint. ECF No. 5 at 7. IDEXX opposes consideration of these extrinsic documents. ECF No. 4 at 5 n.3, 8–9.

Ordinarily, a motion to dismiss "provides no occasion upon which to consider documents other than the complaint." *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020). There is, however, a narrow exception for "documents the authenticity of which are not disputed by the parties; official public records; documents central to the plaintiff's claim; and documents sufficiently referred to in the complaint." *Newman v. Lehman Bros. Holdings*, 901 F.3d 19, 25 (1st Cir. 2018) (quotation modified). Even so, "not every document referred to in a complaint may be considered incorporated by reference and thus introduced by the moving party in support of a motion to dismiss." *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988).

Although Ms. Schnell represents that information contained in these three documents is relevant to her claims, the Court may not incorporate the pleadings from other cases into the operative complaint. *See Meyer v. Cnty. of San Diego*, No. 21-cv-341, 2025 WL 2042360, at *14 (S.D. Cal. July 21, 2025) (disallowing plaintiff's wholesale incorporation of allegations from a complaint in a separate case); *Spirit Lake Tribe v. Jaeger*, No. 18-cv-222, 2019 WL 13299003, at *2 (D.N.D. June 17, 2019) (disallowing plaintiff's attempt to incorporate by reference his own complaint from another case filed in the same district court); *Blackwell v. Jones Day L. Firm*, No. 20-11493, 2021 WL 764124, at *3 (E.D. Mich. Feb. 26, 2021) ("A party cannot incorporate by reference allegations from a pleading filed in another case . . . without re-stating the allegations at issue."); *Getzen v. Yavapai Cnty.*, Dkt. No. 20-cv-08053, ECF No. 27, at *4 (D. Ariz. Jan. 25, 2021) ("Plaintiff may not incorporate by reference claims or allegations from another

2

case."); 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1326 (4th ed. 2026) (noting "allegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference" and collecting cases prohibiting the same).

Thus, in deciding IDEXX's motion to dismiss, the Court is confined to the allegations appearing on the face of Ms. Schnell's complaint. To the extent Ms. Schnell relies on allegations contained in the Plaintiffs' Second Amended Class Action Complaint, the Mayhew First Amended Complaint, and the Hoisser Complaint, the Court will not consider them.

## II.   Background[1]

In April 2012, Ms. Schnell began working at IDEXX as a customer support consultant. ECF No. 1 ¶ 9. IDEXX specializes in veterinary diagnostics, software, and water microbiology testing. *Id.* ¶ 4. Ms. Schnell performed her job duties satisfactorily and IDEXX promoted her several times. *Id.* ¶ 11. Before 2016, Ms. Schnell applied for a role as a diagnostic support consultant. *Id.* ¶ 14. Initially, the company passed her over for the position because she was "overly confident," but IDEXX later promoted her to the role. *Id.* ¶¶ 14, 16. By or around August 2019, Dr. Kristi Graham served as her manager. *Id.* ¶ 16. Toward the end of 2020 or beginning of 2021, IDEXX's medical consulting management team reorganized, and Meghan Ludka took over as Ms. Schnell's supervisor. *Id.* ¶ 17. Ms. Schnell's position required her to manage lab service calls and customer concerns, responsibilities that she believed IDEXX did not properly train her to handle. *Id.* ¶¶ 18, 19. Feeling unsupported in her role, Ms. Schnell complained to her supervisor,

---

[1] The Court derives these facts from Ms. Schnell's complaint, ECF No. 1, treats them as true, and draws all reasonable inferences in her favor for purposes of resolving IDEXX's motion to dismiss. *See Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021).

Ms. Ludka, in mid-2021. *Id.* ¶ 19. When Ms. Ludka failed to respond adequately to her concerns, Ms. Schnell escalated them to a human resources ("HR") representative, who suggested she speak with Ms. Ludka's supervisor, Dr. Erin Brown, which Ms. Schnell did. *Id.* ¶¶ 20, 21. Shortly after reaching out to HR, Ms. Schnell received a verbal warning concerning metrics and status codes that she alleges was pretextual. *Id.* Dr. Brown followed up with Ms. Schnell during which time Ms. Schnell shared her disappointment in HR's response to and the company's handling of her concerns. *Id.* ¶ 22.

Some time thereafter, Ms. Schnell applied for the position of product manager in IDEXX's hematology department. *Id.* ¶ 23. Ms. Schnell scheduled one-on-one meetings with the hiring manager concerning the role, but Ms. Ludka cancelled them. *Id.* Ms. Ludka later obtained that same position. *Id.* ¶ 24. In 2023, Ms. Schnell's manager changed again, this time to Dr. Kathryn Rawling. *Id.* ¶ 25. IDEXX continued to scrutinize Ms. Schnell's performance without providing the guidance she needed to succeed in her role. *Id.* To better understand her customer-facing interactions, Ms. Schnell requested recordings of her customer service calls. *Id.* ¶ 26. Despite those efforts, IDEXX continued to criticize her communication style. *Id.* Ms. Schnell shared with her manager that she did not know how to "request assistance and coaching at IDEXX without facing punitive action," and her manager agreed and confirmed that the company had a "pervasive culture of retaliation." *Id.* ¶ 27.

IDEXX instructed Ms. Schnell that she needed voice coaching and critiqued her communication style, labeling her as "rude" and "mean." *Id.* ¶ 29. The company also accused her of being "too direct." *Id.* ¶ 31. Around March 2023, IDEXX issued Ms. Schnell a formal discipline notice, entitled "Written Expectations Summary." *Id.* ¶ 32. It critiqued her "feelings" and "negative state of mind." *Id.* Ms. Schnell alleges IDEXX would not have

criticized a male employee in the same manner.[2] *Id.* ¶¶ 28, 29, 31, 32. At some point during her time at IDEXX, Ms. Schnell stated, "I can just shoot people" on a recorded line. *Id.* ¶ 33. IDEXX was critical of this comment. *Id.*

In December 2023, IDEXX decided to terminate Ms. Schnell's employment, and it followed through in February 2024. *Id.* ¶¶ 34, 35. Ms. Schnell contends her firing resulted from "repeated instances of heightened scrutiny over her actions with customers" that, in her opinion, would not have occurred if she were male. *Id.* ¶ 34. During her last year of employment at IDEXX, Ms. Schnell expressed apprehension with the "4Dx Multiplex" test and its purportedly erroneous results; she alleges her supervisors were "particularly retaliatory" in response to these concerns. *Id.* ¶ 36. She further asserts that a colleague at the company acknowledged Ms. Schnell often posed "hard questions" and IDEXX "didn't like it." *Id.* ¶ 37.

Ms. Schnell filed complaints with the Equal Employment Opportunity Commission ("EEOC") and the Maine Human Rights Commission ("MHRC"). *Id.* ¶ 6. She received a right to sue letter from the MHRC on or about April 22, 2025. *Id.* On July 21, 2025, Ms. Schnell filed a complaint in this Court, alleging three counts: (1) sex-based discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; (2) retaliation after opposing a practice made unlawful by Title VII; and (3) discrimination and retaliation in violation of the MHRA, 5 M.R.S. § 4571 *et seq. Id.* ¶¶ 41–60. IDEXX moved to dismiss all three counts. ECF No. 4.

---

[2] In this factual background section, the Court has included allegations from Ms. Schnell's complaint that, like this one, fall into the category of speculation, legal conclusions, labels, or recitations of the elements of a cause of action. Here, for example, Ms. Schnell does not identify an instance where IDEXX treated a male employee differently; she simply speculates that it would have. In the discussion section below, the Court addresses which allegations it considers and which it sets aside, as they are relevant to the parties' legal arguments.

### III.    Motion to Dismiss Standard

Rule 12(b)(6) motions test the legal sufficiency of a complaint and require a court to determine whether the facts alleged are sufficient to show the plaintiff has pleaded a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Plausible "means something more than merely possible," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012), but is "not akin to a 'probability requirement,'" *Iqbal*, 556 U.S. at 678. To resolve a Rule 12(b)(6) motion, courts employ a structured, two-step inquiry. *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions." *Schatz*, 669 F.3d at 55. It need not credit legal or factual allegations that are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Douglas v. Hirshorn*, 63 F.4th 49, 55 (1st Cir. 2023) (quotation modified). Then, the Court must "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. If the plaintiff fails to "nudge[ her] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "something more than merely possible or merely consistent with a defendant's liability." *Germanowski v. Harris*, 854 F.3d 68, 71–72 (1st Cir. 2017) (quotation modified).

### IV.    Discussion

IDEXX moves to dismiss the complaint in its entirety. The company first contends Ms. Schnell's claims are time-barred by the applicable statute of limitations. IDEXX next

6

argues that even if Ms. Schnell's causes of action are timely, she has failed to state claims upon which relief may be granted. The Court considers each argument in turn.

### A. Statute of Limitations

IDEXX first argues that Ms. Schnell's claims are time-barred because she failed to file her administrative complaint within three hundred (300) days of the date on which the purportedly violative acts occurred. ECF No. 4 at 10–11 n.6. Ms. Schnell does not directly address this contention in her response. *See generally* ECF No. 5. An aggrieved employee alleging unlawful discrimination must first file an administrative complaint with the EEOC or parallel state agency before bringing suit in court. *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31 (1st Cir. 2009). For Title VII claims to be timely, the employee alleging a violation must file an administrative claim with the appropriate state agency within three hundred days of the alleged action that constitutes an unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *see also Thornton*, 587 F.3d at 31. This is a mandatory timeliness requirement and "failure to file within the time period means a potential plaintiff 'lose[s] the ability to recover for [the alleged discrimination].'" *Frederique-Alexandre v. Dep't of Nat. & Env't Res. P.R.*, 478 F.3d 433, 437 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)). Claims under Maine's antidiscrimination and retaliation protection laws are also subject to an administrative exhaustion requirement and three-hundred-day limitation period. 5 M.R.S. §§ 4611; *see also Burnett v. Ocean Props., Ltd.*, 327 F. Supp. 3d 198, 231–32 (D. Me. 2018). At the motion to dismiss stage, dismissal based on a statute of limitations defense is appropriate only "when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998).

Here, while Ms. Schnell alleges that she filed her administrative complaint with the MHRC and EEOC, the only relevant date she provided is the one on which she received MHRC's right to sue letter: April 22, 2025. ECF No. 1 ¶ 6. Neither party attached the administrative complaint. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (allowing consideration at the motion to dismiss stage of documents whose authenticity is undisputed). The Court cannot conclude on the record before it that Ms. Schnell missed the statutory period within which to file her administrative complaint. *See Cavanagh v. IDEXX Lab'ys, Inc.*, No. 23-cv-00273, 2024 WL 2724195, at *4 (D. Me. May 28, 2024) (stating the same). Accordingly, at this point, the issue of timeliness cannot be resolved, and Ms. Schnell's complaint survives IDEXX's motion to dismiss based on the statute of limitations.

## B. Discrimination Claims

IDEXX next argues Ms. Schnell failed to state a sex-based discrimination claim under either Title VII or the MHRA.[3] ECF No. 4 at 11–12. Ms. Schnell's complaint advances a Title VII discrimination theory grounded in both gender stereotyping and disparate treatment. ECF No. 1 ¶¶ 44–47.

The Court first addresses her gender stereotyping claim, which arises "when an individual suffers an adverse employment action because she either conforms or fails to conform to some stereotype or stereotypes attributable to her gender." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224–25 (1st Cir. 2012). Ms. Schnell contends IDEXX criticized her for communicating in a manner that is "stereotypically male" and asserts

---

[3] Ms. Schnell's third count alleges unlawful sex-based discrimination under the MHRA. ECF No. 1 at 10–11. Because such claims under the MHRA are "concurrent with Title VII," the Court considers them together without separately analyzing Ms. Schnell's MHRA claim. *Roy v. Correct Care Sols., LLC*, 914 F.3d 52, 62 (1st Cir. 2019) (quoting *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 22, 969 A.2d 897, 902–03).

IDEXX's criticism of her "voice, personality, and communication style" reflects gender stereotyping and bias. She cites instances in which supervisors described her as "overly confident," told her she needs "voice coaching," and labeled her "mean," "rude," and "too direct." She argues these descriptors are seen as traits stereotypically associated with the masculine and asserts that such behavior "would be applauded coming from a male employee," but, because she was a woman, it was used as a basis for discrimination. ECF No. 1 ¶ 31. Ms. Schnell argues that she suffered adverse employment action as a result when she was passed over for a promotion for being "overly confident." She further argues that IDEXX leveraged these gendered critiques to subject her to heightened performance scrutiny and formal discipline. Ms. Schnell contends that IDEXX's biased discipline practices ultimately resulted in her alleged wrongful termination under the pretext of unprofessional behavior. In response, IDEXX avers the language Ms. Schnell's supervisors used is not gender stereotyping because the terms are gender-neutral and, thus, cannot form the basis of a sex stereotyping claim.

By themselves, the descriptors Ms. Schnell cites do not carry gendered meaning. However, Title VII reaches not only overt bias but also "stereotyping, cognitive bias, and certain other 'more subtle cognitive phenomena which can skew perceptions and judgments.'" *Burns v. Johnson*, 829 F.3d 1, 13 (1st Cir. 2016) (quoting *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 61 (1st Cir. 1999)). In *Price Waterhouse v. Hopkins*, the Supreme Court described gender stereotyping as "evaluat[ing] employees by assuming or insisting that they match[] the stereotype associated with their group." 490 U.S. 228, 251 (1989) (plurality opinion). The Court identified the employer's comments that an "aggressive female employee" required "a course at charm school" as paradigmatic evidence of gender stereotyping. *Id.* at 256. Here, Ms. Schnell alleges IDEXX penalized

female employees who were "overly confident" or "too direct," while treating male employees who displayed similar personality characteristics more favorably. Accepting these allegations as true and drawing all reasonable inferences in Ms. Schnell's favor, the complaint plausibly alleges that IDEXX took adverse action because Ms. Schnell did not conform to gender-based stereotypes. Accordingly, her Title VII claim survives IDEXX's motion to dismiss.

The Court next turns to Ms. Schnell's disparate treatment theory of sex-based discrimination. To make out a prima facie case of sex-based discrimination, Ms. Schnell's allegations must plausibly show she: (1) belongs to a protected class; (2) performed her job satisfactorily; (3) experienced an adverse employment action; and (4) was treated less favorably than similarly situated employees who were outside of her protected class. *Berry v. City of S. Portland*, 525 F. Supp. 2d 214, 228 (D. Me. 2007). While a Title VII claim ultimately requires the plaintiff to establish a prima facie case of discrimination, such a showing is not required to survive a motion to dismiss. *See Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013) ("It is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage."); *Cavanagh*, 2024 WL 2724195, at *7 (on motion to dismiss, the plaintiff does not have to "'establish' the elements of her claim; she must simply plead facts that plausibly allege that she was subjected to illegal discrimination"). Even so, the plaintiff is required to plausibly allege facts sufficient to raise "a reasonable expectation that discovery will reveal evidence" of the necessary element. *Twombly*, 550 U.S. at 556.

Here, IDEXX focuses on the final element, contending Ms. Schnell failed to identify similarly situated male comparators and instead relies on speculation regarding how IDEXX would or would not treat various unidentified male employees under the

same circumstances.4 While "comparator evidence may provide powerful support for a claim of disparate treatment, the existence of a similarly situated employee is not a required element of a Title VII discrimination claim." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 274 n.10 (1st Cir. 2022). IDEXX also points to the fact that "at all relevant times," Ms. Schnell "reported to female supervisors," and the company "hired a female for the product manager position" for which Ms. Schnell "applied but was not hired." ECF No. 4 at 6 n.4. But Ms. Schnell need not prove that an individual with the same protected attribute filled the job, nor that she was supervised by an individual outside of her protected class, to satisfy the fourth element on a motion to dismiss. *See Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 155 (1st Cir. 1990) (a plaintiff "can make out the fourth element of her prima facie case without proving that her job was filled by a person not possessing the protected attribute").

Even so, Ms. Schnell's complaint largely relies on allegations of how IDEXX would have treated a hypothetical male employee; rather than identify instances where IDEXX handled similar behavior by a male employee differently, she simply speculates that the company would have.5 *See* ECF No. 1 ¶¶ 15, 28, 29, 31, 32. Although "some latitude may be appropriate where a plausible claim may be indicated based on what is known, at least where, as here, some of the information needed may be in control of the defendants," simply including "information and belief" in the complaint does not permit "pure

---

4 IDEXX alternatively contends that even if the Court were to consider the attached extrinsic exhibits, the examples of similar bad behavior by male employees that Ms. Schnell alleges via the Mayhew First Amended Complaint and Hoisser Complaint are not valid comparators because the referenced male employees work in different departments, report to different supervisors, and operate under distinct circumstances. Because the Court already declined to incorporate by reference these extrinsic exhibits, it need not address this argument.

5 For example, Ms. Schnell alludes to "IDEXX tolerat[ing] bad behavior from male employees without terminating them," ECF No. 1 ¶ 38, but does not detail any such bad behavior.

speculation." *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44–45 (1st Cir. 2012) (quotation modified). Ms. Schnell alleges she was heavily scrutinized and eventually terminated for her communication style and a single recorded comment that she made in frustration ("I can just shoot people"), while IDEXX did not similarly critique or punish male employees who engaged in egregious threats of violence or harassment. Here, the complaint falls short because it does not identify any egregious actions by male employees,[6] nor any other facts supporting a plausible inference that IDEXX's actions were motivated by Ms. Schnell's gender or gender-based characteristics instead of, as IDEXX points out, gender-neutral safety concerns. Without sufficient allegations related to the male employees, the Court cannot infer Ms. Schnell was treated less favorably.

In sum, the Court **DENIES** IDEXX's motion to dismiss Count I to the extent that it proceeds under a gender stereotyping theory of sex-based discrimination, but **GRANTS** the motion to the extent that Count I proceeds under a disparate treatment theory. Because claims under the MHRA are concurrent with Title VII, the same disposition applies to Count III.

## C. Retaliation Claims

IDEXX also moves to dismiss Ms. Schnell's claims under the anti-retaliation provisions of Title VII and the MHRA.[7] ECF 1 at 9–10. To prove retaliation, Ms. Schnell must plausibly show: (1) protected activity under Title VII; (2) a materially adverse action;

---

[6] In her complaint, Ms. Schnell asserts IDEXX did not discipline various male employees for "egregious behavior" the way it did Ms. Schnell "for far less egregious behavior," ECF No. 1 ¶¶ 30, 33, and it "excus[ed] far more egregious and serious threats of actual violence by male employees, or sexually harassing behavior by them," *id.* ¶ 33—but she does not include specific, well-pleaded facts about what that egregious conduct entails within the four walls of her complaint.

[7] Ms. Schnell's third count alleges unlawful retaliation under the MHRA. ECF No. 1 at 10–11. As with her first count for unlawful sex-based discrimination, the Court's retaliation analysis under Title VII also applies to her retaliation claim under the MHRA because they are concurrent. *See Roy*, 914 F.3d at 62.

and (3) a causal connection between her protected activity and the materially adverse action. *Deangelis v. Hasbro, Inc.*, 165 F.4th 646, 652 (1st Cir. 2026). The first element—protected activity—can be established through allegations of oppositional conduct, including "informally opposing an employment activity that might violate Title VII" with complaints to one's superiors. *Donovan v. Nappi Distribs.*, 703 F. Supp. 3d 135, 265–66 (D. Me. 2023) (internal citation omitted). Furthermore, "the complained-of conduct need not actually be illegal, but the employee must prove that a reasonable person might have believed that it was." *Tripp v. Cole*, 425 F.3d 5, 9 (1st Cir. 2005) (quotation modified). Even so, the statute does not provide protections against "arbitrary or unfair treatment in private employment," it only protects against "actions motivated by listed prejudices, such as . . . gender." *Sabinson v. Trs. of Dartmouth Coll.*, 542 F.3d 1, 4 (1st Cir. 2008).

The second element—materially adverse action—"is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). Rather, it extends to all materially adverse actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57.

The third and final element—causal connection—can be established if the protected activity "was a but-for cause of the alleged adverse action by the employer." *Ing v. Tufts Univ.*, 81 F.4th 77, 84 n.5 (1st Cir. 2023) (internal citation omitted). In addition, the Court may infer causation where there is temporal proximity between the purported protected conduct and adverse action, but such an inference requires proof that the decision maker knew about the protected conduct at the time of the adverse action. *Stratton v. Bentley Univ.*, 113 F.4th 25, 45 (1st Cir. 2024). Moreover, as with her discrimination claims, Ms. Schnell need not put forth all elements of the prima facie case

13

in her complaint; she "must simply allege facts that give rise to a plausible inference that retaliation occurred." *Frith*, 38 F.4th at 277. At any rate, courts utilize "the elements of a prima facie case . . . as a prism to shed light upon the plausibility of the claim." *Deangelis*, 165 F.4th at 653 (quoting *Rodríguez-Reyes*, 711 F.3d at 54).

Because IDEXX only contests the first element of Ms. Schnell's retaliation claim— protected activity—the Court focuses its analysis there. Ms. Schnell contends she repeatedly complained to her supervisors and HR about how she was being treated. Her factual allegations include:

- Ms. Schnell "complained to her supervisor . . . that she did not feel supported in her role or properly trained for the various customer concerns that she was required to mitigate." ECF No. 1 ¶ 19.
- She informed a supervisor that she "felt disappointed and frustrated, because she went to HR for guidance and support, and was disciplined very soon after, suggesting retaliation." *Id.* ¶ 22.
- She "told her manager that she did not know how to request assistance and coaching at IDEXX without facing punitive action" and her manager "agreed with this concern, confirming that IDEXX has a pervasive culture of retaliation." *Id.* ¶ 27.

14

But these allegations[8] are all divorced from gender-based discrimination or other practices that Title VII prohibits.[9] In her response to IDEXX's motion to dismiss, Ms. Schnell argues her allegations are sufficient because her manager agreed with her concerns, thus satisfying the plausibility standard. ECF No. 5 at 13. But a Title VII retaliation claim requires allegations that Ms. Schnell engaged in statutorily protected activity, which her complaint does not plausibly allege. As pleaded, Ms. Schnell's communication with her manager concerned her "not know[ing] how to request assistance and coaching at IDEXX without facing punitive action." ECF No. 1 ¶ 27. It does not include allegations that she complained of, opposed, or otherwise raised concerns about "disparate treatment based on her gender" as she contends in her response to the motion to dismiss. ECF No. 5 at 13. Nor do her other factual assertions support an inference that she was voicing concerns related to gender-based disparate treatment in the other instances alleged.

Ms. Schnell further argues her complaints of retaliation to supervisors were protected by Title VII merely because those complaints concerned retaliation. But Title VII is limited to protecting retaliation "motivated by listed prejudices." *Sabinson*, 542 F.3d at 4; *see* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful to discriminate based on "race, color, religion, sex, or national origin"). Even though Ms. Schnell understood a colleague's comment that she was "one of the [employees] who asked hard questions and

---

[8] Ms. Schnell also alleges that she "opposed a practice made unlawful by Title VII by making complaints to HR about how she was being treated." ECF No. 1 ¶ 52. The Court disregards this allegation as a legal conclusion because it merely recites elements of a retaliation cause of action. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 10 (1st Cir. 2011) ("Unlike factual allegations, legal conclusions contained within a complaint are not entitled to a presumption of truth.").

[9] Ms. Schnell alleges she "experienced gender-based discrimination and retaliation for opposing practices made unlawful by Title VII while working for IDEXX, which were similar to the experiences of other female employees," ECF No. 1 ¶ 13, but she does not elaborate on the experiences of those other female employees beyond her attempts to incorporate the outside complaints.

[IDEXX] didn't like it" to be a "direct acknowledgement that IDEXX retaliates against employees who assert their rights, ask difficult questions, or speak out against illegal practices," ECF No. 1 ¶ 37 (alterations in original), the conclusory statement lacks supporting allegations of protected activity under Title VII.

The Court is "not suggesting that she had to throw around buzzwords like 'sex' or 'sexual' harassment," but Ms. Schnell does not plausibly allege she communicated "something to put [IDEXX] on notice that the complained-of harassment was sex-based." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 138 (1st Cir. 2013). Absent such supporting allegations, the Court cannot conclude that Ms. Schnell's complaints amounted to protected activity for purposes of a Title VII retaliation claim. *See, e.g.*, *Harris v. Off. of N.Y. State Comptroller*, No. 20-cv-8827, 2022 WL 814289, at *17 (S.D.N.Y. Mar. 17, 2022) (dismissing a Title VII retaliation claim where the plaintiff "failed to allege that he engaged in protected activity" because the plaintiff did "not allege that he ever explicitly raised the issue of gender discrimination when he complained").

Further, to the extent Ms. Schnell argues IDEXX retaliated after she complained about perceived issues with the company's 4Dx Multiplex test and the labs it produced, while such claims may have been sufficient under a state whistleblower statute, the conduct does not constitute protected activity under Title VII. *See, e.g.*, *Galouch v. Me. Dep't of Pro. & Fin. Regul.*, 856 F. Supp. 2d 244, 252 (D. Me. 2012) (retaliation claims unrelated to discrimination should have been brought under a whistleblower statute, not Title VII).

The complaint, even when viewed in a favorable light, lacks factual allegations supporting an inference of protected activity under Title VII. Thus, the Court **GRANTS** IDEXX's motion to dismiss Count II. And because claims under the MHRA are concurrent

with Title VII, the Court also **DISMISSES** Ms. Schnell's Count III retaliation claim without prejudice.

### V.    Conclusion

For these reasons, the Court **DENIES** IDEXX's motion to dismiss Counts I and III to the extent that those counts proceed under a gender stereotyping theory of sex-based discrimination, and it **GRANTS** the motion to dismiss Counts I and III to the extent those counts proceed under a disparate treatment theory of sex-based discrimination. The Court further **GRANTS** IDEXX's motion to dismiss Count II for retaliation and Count III to the extent that it proceeds under a theory of retaliation. ECF No. 4.

Although Ms. Schnell has not requested leave to amend her complaint, the Court affords her the opportunity to do so in the interest of justice. *See* Fed. R. Civ. P 15(a). Accordingly, Ms. Schnell has 21 days within which to file an amended complaint. If Ms. Schnell fails to file an amended complaint by July 2, 2026, the Court will **DISMISS** without prejudice Count I insofar as it alleges disparate treatment under Title VII, Count II for retaliation, and Count III insofar as it alleges disparate treatment or retaliation.

The Defendant shall file an answer within 14 days after the filing of any amended complaint or, if no amended complaint is filed, within 14 days after the expiration of the amendment deadline.

**SO ORDERED.**

Dated this 11th day of June, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

17